IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAEMANJE THOMAS<br>718 Curlett Street<br>Wilmington, DE 19801<br><br>     *Plaintiff*<br><br>v.<br><br>COPPIN STATE UNIVERSITY<br>25000 W. North Avenue<br>Baltimore, MD 21216<br><br>     *Defendant.* | Case No. 1:23-cv-2217<br><br>Jury Trial Demand |

## COMPLAINT

Plaintiff Kaemanje Thomas (hereinafter "Plaintiff Thomas," "Dr. Thomas," or "Plaintiff") by and through his attorneys, hereby files this Complaint against Coppin State University, (hereinafter "Defendant" or "Coppin State"). Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.*; The Fourteenth Amendment of the United States Constitution; and common law breach of contract claims and seeks damages, including but not limited to declaratory, injunctive, and other equitable relief; compensatory damages; and litigation expenses and reasonable attorneys' fees based on Defendant's discriminatory, harassing, and otherwise unlawful actions against Plaintiff Thomas.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000.

2. This Court also has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.*, both laws of the United States, in addition to the Fourteenth Amendment of the U.S. Constitution, and all other claims are part of the same case or controversy per 28 U.S.C. § 1367.

3. Plaintiff has exhausted all administrative remedies prior to filing suit.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions and employment decisions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## PARTIES

5. Plaintiff Kaemanje Thomas. A male individual, is a citizen of Delaware presently residing at 718 Curlett Street, Wilmington, Delaware, 19801. At all times relevant hereto, Plaintiff was an employee of the Defendant and entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.*

6. Defendant Coppin State University is an institution of higher education in the State of Maryland with an address of 2500 W North Ave, Baltimore, MD 21216. At all times relevant hereto, Defendant was an employer as defined by Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.*

## FACTS

7. Dr. Thomas began employment as a tenure-track Assistant Professor of Elementary Education in the Department of Teaching and Learning at Coppin State University commencing on or about August 15, 2022, after signing a one-year employment contract.

8. Almost immediately after he began employment, Dr. Thomas began to experience harassment and inappropriate behavior in the workplace from Dean Leontye Lewis ("Dean Lewis"), Dean of College of Arts and Sciences and Education. During a phone call sometime in August of 2022, Dean Lewis called Dr. Thomas a "sissy" when he briefly mentioned he was having some health troubles, she dismissed it and said she was joking. These comments were extremely hurtful and intentionally degrading. Dr. Thomas was utterly shocked that he was attacked on grounds of his gender expression, but it was too late to turn down the job as he had already accepted the offer at Coppin State University and turned down other positions he was offered.

9. On August 30, 2022, Dean Lewis attempted to humiliate Dr. Thomas by berating him during a department meeting with his work colleagues by singling him out for not yet selecting a school to service. She made a joke using Jamaican patois, to which he did not laugh. At the time, Dr. Thomas found it odd that Dean Lewis singled him out. Dr. Thomas sent an email to address and resolve this encounter but received no response from Dean Lewis. Dr. Thomas thereafter escalated the matter to the Chairperson of the Department of Teaching and Learning, Dr. Karen Santos Rogers and Dr. Daniel Joseph,

and requested a meeting to diffuse the situation as he was concerned about his standing in the department. At this meeting, Dean Lewis was confrontational and dismissive, and the meeting resulted in no perceivable resolution.

10. Dr. Thomas suffers from chronic back pain due to a car accident in addition to an autoimmune disorder and undiagnosed abdominal discomfort. These conditions limit Dr. Thomas' major life activities, most notably those related both to mobility and maintaining a prolonged seated position. During a September 17, 2022, meeting, Dean Lewis once again shockingly attacked Dr. Thomas' gender expression when he informed her of his abdominal health issues. By way of elaboration, Dean Lewis spoke of how she dealt with her own and her family's health issues but nonetheless worked without issue. She then told Dr. Thomas "I am not asking any of you to do what I am not doing. As a man, you need to man up and <u>stop being a sissy</u>!" Dean Lewis essentially suggested that Dr. Thomas was less of a "man" than her because he was limited by health issues. When Dr. Thomas alerted her of that fact, Dean Lewis offhandedly responded that she was "only joking." Rather than providing faculty support, Dean Lewis questioned Dr. Thomas' gender expression, and this caused him to become subdued in meetings and only speak if necessary. Thereafter, Dr. Thomas came to understand that Dean Lewis' mistreatment of him was rooted in her perception that Dr. Thomas is effeminate and therefore unworthy of respect.

11. Since these incidents transpired, Dr. Thomas has been made aware by Dr. Nicholas Eugene, Faculty Senate President, that another professor confided in Dr. Eugene that they were uncomfortable with Dean Lewis' attacks on Dr. Thomas' gender expression, which

suggests Dean Lewis also described Dr. Thomas as a "sissy" to others when he was not around.

12. Not only did Dean Lewis fail to provide support or guidance to Dr. Thomas, but other faculty members either fostered or exhibited similar, unprofessional conduct. Another faculty member, Dr. Rogers dismissed Dr. Thomas' multiple emails expressing concerns about his onboarding process, student behavior, and classroom technology issues. Dr. Rogers would respond with statements such as "dude, I do not know what to tell you, figure it out like I am." On September 20, 2022, Dr. Thomas was threatened by Dr. Rogers after he voiced his dissatisfaction with his working conditions. Dr. Rogers told him, "shut your mouth or else I will be forced to write you up." Dr. Rogers did not treat those without a reputation for being "sissies" in this acerbic manner.

13. On October 20, 2022, Dr. Thomas submitted an ADA Accommodations form to Human Resources noting his limited mobility to lumbar pathology and requesting reasonable accommodations in the form of remote work several days per week. However, Dean Lewis was dismissive of Dr. Thomas' concerns when he inquired on the status of his reasonable accommodations request and responded that she did not have time to hear his concerns. To date, Dr. Thomas still has not received any updates on his ADA form from the Chief of Human Resources, Dr. Lisa Early.

14. Dr. Thomas was bullied in his classroom by a student, Tamia Anthony, but he did not receive any assistance from administrators. The university did not withhold assistance from similarly situated individuals who did not have a reputation for being a "sissies." Dr. Thomas' issues with Ms. Tamia Anthony were substantiated by other faculty members because they also voiced their concerns to the University and Dr. Rogers. These other

faculty members were not dealt with in a similarly dismissive fashion. On October 16, 2022, Dr. Irma Johnson, faculty member in the Department of Teaching and Learning, informed Dr. Thomas that Ms. Anthony's behavior was concerning as Ms. Anthony was unprofessional and rude to the principal and other staff at Matthew A. Henson Elementary School. On October 17, 2022, Dr. Johnson contacted Dr. Rogers via email regarding Ms. Anthony's behavior at Hanson Elementary School. In the email, Dr. Johnson suggested that "a meeting should be held with the student. We are guests in our partner schools, and we want to be continuously welcomed."

15. In November 2022, Dr. Thomas sent additional emails to Dr. Rogers advising of the grave concerns he had with Ms. Anthony's disruptive behavior and history of behaving unprofessionally. Dr. Rogers failed to provide support or be of any assistance in the matter. As Dr. Thomas was becoming more uncomfortable regarding his safety, he emailed Ms. Anthony's advisor, Dr. Gamble-Lomax, informing her of his concerns with Ms. Anthony's disruptive behavior. However, all of Dr. Thomas' efforts were to no avail.

16. On December 6, 2022, Dr. Thomas was verbally assaulted in the classroom by Ms. Anthony at 5:30 p.m. when she cursed at him in the classroom. Fearing for his and other students' safety, Dr. Thomas asked Dr. Brinson (a faculty member in the classroom next door) to call campus security.

17. On December 7, 2022, Dr. Thomas submitted a formal complaint to the Vice President of Academic Affairs regarding Dr. Rogers' behavior. Dr. Thomas also filed a complaint with Human Resources. Dr. Thomas understood this lack of assistance to be motivated by the fact that he was not liked for being a "sissy."

18. After many months of harassment and unable to find recourse, Dr. Thomas sent an email requesting a meeting with University President Anthony Jenkins to discuss his ongoing concerns with Dean Lewis and Dr. Rogers. After writing the email, Dr. Thomas broke down in tears because he could not believe Dean Lewis was still not yet punished for egregious behavior, her attack on his gender expression, and her bigoted treatment of him.

19. On December 22, 2022, Dr. Thomas received two letters, one dated December 6, 2022 and one dated December 20, 2022, from Dr. Early. The first stated that Dr. Thomas' contract would be terminated at the end of the spring semester in 2023. The second letter indicated that there were multiple complaints that Dr. Thomas had created a hostile work environment. This letter informed Dr. Thomas that he would be placed on administrative leave immediately. Dr. Thomas was blindsided by Dr. Early's letter. Prior to this, Dr. Thomas had never been informed, warned, or otherwise made aware of any actions on his part that violated any policy or caused any discomfort within the department. It is notable that the letter terminating Dr. Thomas is dated on December 6, 2022, the same day that he called campus security on Ms. Anthony. Upon information and belief, Dr. Thomas declining to handle the situation himself, and risk escalation, reinforced perception that he was a "sissy" and contributed to his termination.

20. On December 28, 2022, Dr. Thomas sent a letter to President Jenkins regarding the discrimination and his retaliatory placement on administrative leave and the decision not to renew his appointment. In the letter, Dr. Thomas expressed that he was never made aware of how he was creating a hostile work environment, never received a written warning, and was never placed on an action plan. In the letter, Dr. Thomas noted USM

Policy 13 which states "if in the judgment of the appointee's department chair or supervisor a deficiency in the appointee's professional conduct or performance exists that does not warrant dismissal or suspension, a moderate sanction such as a formal warning or censure may be imposed, provided that the appointee is first afforded an opportunity to contest the action through the established faculty grievance procedure." Dr. Thomas was denied this process. Dr. Thomas' letter concluded with a request for a determination that he is entitled to reappointment on or after June 15, 2023.

21. On March 8, 2023, two faculty members, Dr. Nicholas Eugene and Dr. Vaple I. Robinson, wrote a letter to President Jenkins in support of Dr. Thomas noting his termination or administrative leave violated USM Bylaws and CSU ART documents. The letter stated Dr. Thomas' termination and administrative leave "constitutes a fundamental violation of the principle of due process and violates the fundamental right of a tenured or non-tenured tenured-track faculty."

22. By way of background, per the University System of Maryland Bylaws, Policies, and Procedures of the Board of Regents, tenure-track faculty like Dr. Thomas may be terminated only for moral turpitude, professional or scholarly misconduct, incompetence, or willful neglect of duty per USM-II-1.00(C)(7)(a). Notably, such terminations must be preceded by notice of the relevant grounds for termination and an opportunity to request a hearing. The termination letter Dr. Thomas received, however, neither mentioned one of the aforementioned nor informed him of his right to request a formal hearing on his termination. Correspondingly, there was no formal hearing. Moreover, per USM-II-1.00(C)(7)(b), a faculty member may be relieved of duty with pay prior to termination only under "exceptional circumstances" and review by a relevant faculty

committee. There were not exceptional circumstances when Dr. Thomas was placed on administrative leave, and upon information and belief there was no committee review of this action. Upon information and belief, Dr. Thomas was denied the due process afforded by USM-II-1.00 because he is a "sissy."

23. By way of further background, Coppin State's Procedures and Criteria for the Appointment, Rank, Tenure, and Promotion of Faculty also affords faculty like Dr. Thomas certain rights surrounding a termination process. Identical to the above detailed USM Bylaws, Per Section X-(C)(1) of Coppin State's Procedures, a faculty member can be terminated for-cause only for the following reasons: moral turpitude, professional or scholarly misconduct, incompetence, or willful neglect of duty. Per Section X(c)(2), prior to termination, the faculty member must receive notice of the charges and an opportunity to request a hearing. Dr. Thomas' termination letter failed to mention of which of the aforementioned clearly delineated charges he was accused and did not provide notice of an opportunity for a hearing. Per Section X(C)(3)(c) a terminated faculty member's compensation shall be maintained for one year upon notice of termination. Dr. Thomas did not receive one year of compensation following termination. Upon information and belief, Dr. Thomas was denied the due process afforded by Coppin State's Procedures because he is a "sissy."

24. Dr. Thomas has filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), which issued a Right to Sue, and has retained our firm to represent him.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq.***
**Hostile Work Environment and Discriminatory Termination**

25. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

26. At all pertinent times, Defendant was an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

27. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

28. Under, Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's protected characteristic such as sex and gender expression. Correspondingly, it is unlawful for an employer to permit a hostile work-environment, one in which an individual experiences harassment on the basis of these protected characteristics.

29. Defendant, in violation of Title VII of the Civil Rights Act of 1964, subjected Plaintiff to discrimination based on his sex through Dean Lewis' attacks on Plaintiff's gender expression and Defendant's disparately negative treatment of Plaintiff, in comparison to those not perceived as being men with feminine qualities ("sissies"), by permitting student Tamia Anthony to harass Plaintiff. This created a hostile work-environment for Plaintiff. Defendant also discriminated against Plaintiff by terminating his employment on the unlawful basis of Plaintiff being a "sissy."

30. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered financial harm, emotional distress, pain and suffering, humiliation, and embarrassment.

31. Defendant had no legitimate business reason for any such acts.

32. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT II
### Violation of the Americans with Disabilities Act of 1990
### 42 U.S.C. § 12201 *et seq*.
### Failure to Accommodate

33. Plaintiff incorporates by reference the above paragraphs as if fully stated herein.

34. At all pertinent times, Defendant was an employer subject to the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq* ("ADA")

35. At all pertinent times, Plaintiff was an employee entitled to protection under the ADA.

36. The ADA requires that employers reasonably accommodate an otherwise qualified employee who experiences a disability induced impairment. 42 U.S.C. § 12112(b)(5)(A). This includes engaging in an interactive process to identify said accommodations when an employee makes such a request.

37. Defendant, in violation of 42 U.S.C. § 12112(b)(5)(A), never responded to Plaintiff's request for reasonable accommodations and engaged in no interactive process.

38. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered financial harm, emotional distress, pain and suffering, humiliation, and embarrassment.

39. Defendant had no legitimate business reason for any such acts.

40. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT III
### Fourteenth Amendment of the United States Constitution
### Violation of the Right to Procedural Due Process

41. The Fourteenth Amendment of the United States Constitution prohibits a state from depriving an individual of property without due process of law. To state a claim under the Fourteenth Amendment, a plaintiff must show both a property interest and a state action depriving the plaintiff of that property interest. When a violation of procedural due process is claimed, a plaintiff must further show that the State failed to provide him with notice of the pending deprivation and an opportunity to be heard. "In the context of a termination of a public school teacher, the Fourth Circuit explained that 'Minimal procedural due process required . . . adequate notice, a specification of the charges against [him], an opportunity to confront the witnesses against [him] and an opportunity to be heard in [his] own defense.'" *Id.* Smith v. Maryland, No. RDB-17-3051, 2019 U.S. Dist. LEXIS 153619, at *12 (D. Md. Sep. 9, 2019) (quoting *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984).

42. Plaintiff had a property interest in his employment and related compensation and he was deprived of this property interest when Defendant, an organ of the State, terminated him. In depriving Plaintiff of this property interest, Defendant failed to furnish an adequate specification of the charges, an opportunity to confront the witnesses against him, and an opportunity to be heard in his own defense. Rather, the decision enunciated in the

December 6, 2021 dated later (actually received on December 22, 2021), had an unequivocal tone of finality rather than pendency in deference to carrying out the requirements of due process.

43. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered financial harm, emotional distress, pain and suffering, humiliation, and embarrassment.

44. Defendant had no legitimate business reason for any such acts.

45. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT IV
### Breach of Contract
### (including) Violation of the Covenant of Good Faith and Fair Dealing

46. A contract is formed when (1) parties give mutual assent (offer and acceptance) to an agreement, (2) the agreement has definite terms, (3) and there is adequate consideration. A breach of contract occurs when a party owes a contractual obligation to the other, implied or through contractual terms, and fails to carry out that obligation. Contracting parties in the State of Maryland have an implied obligation to carry out their contractual relationship in good faith and fair dealing.

47. Plaintiff and Defendant, via mutual assent, contracted for Plaintiff to provide educational services for Defendant in consideration of compensation and other benefits. The parameters of this arrangement had definite terms and were governed by the USM Bylaws and Coppin State Procedures.

48. Defendant terminated Plaintiff outside of the above aforementioned parameters by failing to accuse and apprise him of a terminable charge, provide him with an opportunity to be heard, and continue his compensation for one year upon the date of his termination.

49. Terminating Plaintiff contrary to the clearly defined termination process to which the parties agreed to adhere was a breach of Defendant's obligation to service its contract with Plaintiff in good faith and fair dealing and was concurrently a breach of the contract.

50. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered financial harm, emotional distress, pain and suffering, humiliation, and embarrassment.

51. Defendant had no legitimate business reason for any such acts.

52. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Thomas prays as follows:

A.     That the Court issue an order declaring Defendant breached its contract with Plaintiff and violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.*, and the Fourteenth Amendment of the United States Constitution;

B.     That the Court enter judgment against Defendant and award damages no less than $5,000,000 Million Dollars;

C.     That the Court issue a permanent injunction prohibiting Defendant from engaging in any further acts of discrimination, harassment, and retaliation;

D.      That the Court enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law;

E.      That the Court order Defendant to refrain from any action against Plaintiff, or any other person, for participating in or supporting this case in any manner;

F.      That the Court order Defendant to pay compensatory damages;

G.      That the Court order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

H.      That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendant.

Date: August 14, 2023

Respectfully submitted,

*/s/ David A. Branch*
David A. Branch
Maryland Bar No. 9709050001
Law Office of David A. Branch
& Associates, PLLC
1828 L Street N.W., Suite 820
Washington, D.C. 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: davidbranch@dbranchlaw.com

   */s/      Matthew Mainen*
Matthew Mainen
Maryland Bar No. 2012170265
Law Office of David A. Branch &
Associates, PLLC
1828 L Street, N.W., Suite 820
Washington, D.C. 20006
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: matthewmainen@dbranchlaw.com